**Kenneth W. CONOVER and Margaret J. Conover, Plaintiffs,**

v.

**BEKINS VAN LINES CO., et al., Defendants.**

No. 97–764.

United States District Court,
S.D. Ohio,
Western Division.

March 30, 1999.

M. Bradford Sanders, Montgomery, OH, for Plaintiffs.

Peter Lawrence Ney, Jeffrey S. Routh, Joseph Warren Gelwicks, Rendigs Fry Kiely & Dennis—1, James E. McLean, Jr., Cincinnati, OH, for Defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant Anthem Casualty Insurance's Motion for Summary Judgment (doc. 10), to which Plaintiffs Kenneth and Margaret Conover filed a Response and Cross–Motion for Partial Summary Judgment (doc. 21) and Defendant filed a Response (doc. 24) and a Reply (doc. 27).

## BACKGROUND

The parties do not dispute the facts of the case. On February 28, 1997, Bekins Van Lines Company and Star Moving Storage Company, Incorporated, packed and loaded Plaintiffs' personal and household goods in preparation for transportation from Plaintiffs' home in Cincinnati, Ohio to their new home in Augusta, Georgia. An employee of Bekins and Star then parked the moving van at a marina parking lot on Kellogg Avenue and left the van there until March 14, 1997. At that time,

---

the Ohio River flooded and the flood water damaged and destroyed all of Plaintiffs' personal and household goods on the van.

Plaintiffs sought reimbursement for their losses under their Homeowner's Policy, numbered UF4480881, (the "insurance policy") with Defendant Anthem Casualty Insurance ("Anthem"). However, Anthem refused to reimburse Plaintiffs for the loss of their personal and household goods, asserting that the insurance policy specifically excludes losses due to perils such as floods. Plaintiffs thereafter filed suit against Anthem for damages to their personal property and household goods.

The following are relevant portions of the insurance policy at issue.

Section I Property Coverages

Coverage C—Personal Property

We cover personal property owned or used by an insured while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the residence premises occupied by the insured;

2. A guest or a residence occupied by an insured.

Our limit of liability for personal property usually located at the insured's residence, other than the residence premises, is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. Personal property or a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

\* \* \* \* \* \*

(doc. 1, Ex. B, at 2).

SECTION I PERILS INSURED AGAINST

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I—EXCLUSIONS.

1. Fire

2. Windstorm or hail

3. Explosion

4. Riot or civil commotion

5. Aircraft

6. Vehicles

7. Smoke

8. Vandalism or malicious mischief

9. Theft

10. Falling Objects

11. Weight of ice, snow or sleet

12. Accidental discharge or overflow of water or stream

13. Sudden and accidental tearing apart, cracking, burning or bulging

14. Freezing

15. Sudden and accidental damage from artificially generated electrical current

16. Volcanic eruption.

(*Id.* at 6). The insurance policy further provided for perils that were excluded under it, stating in "SECTION I—EXCLUSIONS" that:

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. Ordinance or Law;

2. Earth movement;

3. Water Damage, meaning:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water which backs up through sewers or drains or which overflows from a sump; or

c. Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk driveway, foundation, swimming pool or other structure. Direct loss by fire, explosion or theft resulting from water damage is covered.

4. Power Failure;

5. Neglect;

6. War
7. Nuclear Hazard;
8. Intentional Loss.

(*Id.* at 6–7 of 14).

In the instant matter, Defendant Anthem now moves this Court to enter summary judgment on its behalf, arguing that the plain and unambiguous insurance policy language excludes from coverage loss due to water damage from the flooding of a body of water. However, Plaintiffs assert that the damage to their personal and household goods was not caused by the flooding of the Ohio River, but by the negligent use of a vehicle by the Bekins and Star employee. Further, Plaintiffs contend that the property was "anywhere in the world," as the policy protects, and that it was in the process of a residential move, as the insurance policy specifically contemplates. Plaintiff also filed a cross-motion for summary judgment in this case.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the

moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

 Generally, when interpreting insurance policies, the court must adopt the construction of the provision that most nearly corresponds with the intention of the parties. *University of Cincinnati v. Arkwright Mut. Ins. Co.,* 51 F.3d 1277, 1280 (6th Cir.1995). The insurance policies are to be construed to give plain and ordinary meaning to their words. *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383 (1988). However, in situations where the language of the insurance policy provision is ambiguous, the policy is to be liberally construed in favor of the claimant seeking coverage. *Id.* Moreover, "[i]t is only when a provision in a policy is susceptible of more than one reasonable interpretation that an ambiguity exists in which the provision must be

resolved in favor of the insured." *Hacker v. Dickman,* 75 Ohio St.3d 118, 119–20, 661 N.E.2d 1005, 1006 (1996). However, we recognize that this rule of construction cannot be employed to create ambiguity where there is none. *Id.* at 120, 661 N.E.2d at 1006.

The insurance policy in this case is a named-perils insurance policy. Reviewing its provisions, we find that they are not ambiguous; rather the insurance provisions specifically state which perils are included and excluded under the insurance policy. Thus, we will construe the provisions of the insurance policy under their plain and ordinary meanings and not create ambiguity where there is none.

█ Even assuming that the Bekins and Star employee was negligent in parking the van at the Kellogg Avenue parking lot, we do not find that their negligence is covered under any of the sixteen (16) named perils in Section I of the insurance policy. Moreover, we agree with Defendant Anthem that Plaintiffs' interpretation that the Bekins and Star employee's use of the van falls within "subsection 6—Vehicles" is overreaching. As the preliminary language in Section I indicates, the vehicle must be the cause of the loss to Plaintiffs' property. In this case, however, neither the vehicle or any of the other 15 perils named can be said to have caused the loss.

█ In determining proximate cause, Ohio courts have reasoned that:

[T]he general rule of insurance law is that only the proximate cause of loss, and not the remote cause is to be regarded in determining whether recovery may be had under a policy of insurance, and that the loss must be proximately caused by a peril insured against.

\*　\*　\*　\*　\*　\*

If the nearest efficient cause of the loss is not a peril insured against, recovery may nevertheless be had if the dominant cause of a risk or peril insured against. When it is said that the cause to be sought is the direct and proximate cause, it is not meant that the cause or agency which is nearest in point of time

or place to the result is necessarily to be chosen, since the dominant cause may be concurrent or remote in point of time or place. In other words, in determining the cause of a loss for the purpose of fixing insurance liability when concurring causes of damage appear, the proximate cause to which the loss is to be attributed is or may be the dominant or efficient cause the one that sets others in motion although other and incidental causes may be nearer in time to the result and may operate more immediately in producing the loss.

*Midwest Specialties, Inc. v. Westfield Ins. Co.,* No. 14027, 1994 WL 107192, at \*9–\*10 (Ohio App. 2 Dist. Mar. 30, 1994) (citing 43 Am.Jur.2d, Insurance, Section 463, 526–27 & *Holmes v. Employers' Liab. Assur. Corp., Ltd.,* 70 Ohio App. 239, 254, 43 N.E.2d 746, 752 (1941)). In this case, we believe that the flooding of the Ohio River was the dominant, and thus, proximate cause of Plaintiffs' damages. While the insurance policy covers Plaintiffs' property for loss due to any of the named perils "anywhere in the world," this coverage language must be read in context with the exclusionary perils provision.

### CONCLUSION

Having examined the provisions of the insurance policy, the briefings of the parties as well as the authorities relied upon by each, we conclude that there is no genuine issue of material fact as to whether the damages to Plaintiffs' personal and household property was due to the flooding of the Ohio River. Accordingly, Defendant Anthem Casualty Insurance Group's Motion for Summary Judgment is hereby GRANTED. Plaintiffs' Cross–Motion for Summary Judgment is DENIED. Consequently, Counts IV and V of Plaintiffs'. Complaint against Defendant Anthem are DISMISSED WITH PREJUDICE.

SO ORDERED.